## A98A0838. ELLISON v. THE STATE.
### (504 SE2d 779)

RUFFIN, Judge.

A jury found Shawn Ellison guilty of selling cocaine, possession of cocaine with intent to distribute and possession of cocaine with intent to distribute within 1,000 feet of a government housing project. Ellison appeals, challenging the sufficiency of the evidence. For reasons which follow, we affirm.

" 'On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, (are) a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Shabazz v. State,* 229 Ga. App. 465 (1) (494 SE2d 257) (1997).

Viewed in this light, the evidence at trial showed that Hall County Deputy Sheriff Marcus Neville and other deputies conducted surveillance of Ellison's residence to obtain evidence of drug activity. Living with Ellison at the house were his sister, Sylvia Martin, her children and her fiancé, Michael Rucker.

During their surveillance, the deputies observed what appeared to be a drug transaction in the front yard. An individual, later identified as Keith Caldwell, parked his pickup truck in front of the house. Ellison exited the house, and after a brief conversation with Caldwell, re-entered. A short time later Ellison returned to the front yard where Deputy Neville observed what he described as a hand-to-hand

transaction. According to Neville, Ellison appeared to hand something to Caldwell, who in return handed what appeared to be money to Ellison. Caldwell then returned to his truck and drove away.

Following the apparent transaction, Neville called other deputies on his radio and provided a description of Caldwell's truck. The other deputies stopped Caldwell and eventually discovered a small amount of crack cocaine in the rim of his hat. Caldwell told the deputies that he purchased the cocaine from Ellison for $20.

Later that day, several deputies executed a search warrant on Ellison's residence. When they entered the home, they found Ellison in the home's only bathroom. During their search, the deputies found a plastic bag containing four pieces of crack cocaine in the bathroom medicine cabinet and another container also holding four pieces of crack cocaine on top of the refrigerator. Finally, in Ellison's bedroom, a deputy found a picture identification card of Ellison, a razor blade which one deputy testified is often used in cutting crack cocaine for distribution, and a small ziplock bag containing what appeared to be cocaine residue.

While the deputies were still at the residence, Michael Rucker returned home. Rucker informed the deputies that the cocaine found on top of the refrigerator belonged to him. As for the cocaine in the bathroom, Rucker testified that he thought he told the deputies that it, too, was his. In any event, Rucker subsequently pled guilty to possession of all the cocaine found in the house. And, at Ellison's trial, Rucker testified that he owned the cocaine found on the refrigerator, the cocaine found in the bathroom and the razor blade found in Ellison's bedroom. Rucker further stated that Ellison did not have any interest in any of the cocaine found in the house.

Ellison also testified in his own behalf at trial. During his testimony he denied selling cocaine to Caldwell and further stated that he did not own any of the cocaine found in the residence.

1. Ellison asserts there was insufficient evidence establishing that he sold cocaine to Caldwell. We disagree. In light of Deputy Neville's eyewitness testimony concerning the transaction, Caldwell's unequivocal statement that he purchased the cocaine he possessed from Ellison, the deputies' recovery of the cocaine from Caldwell and a videotape of the transaction played to the jury, a rational trier of fact could have found Ellison guilty beyond a reasonable doubt of selling cocaine. See *Jackson v. Virginia*, supra; *McQueen v. State*, 228 Ga. App. 732 (1) (492 SE2d 720) (1997).

2. Ellison also asserts the circumstantial evidence showing he possessed the cocaine found in the residence was insufficient to support his convictions for possession with intent to distribute and intent to distribute within 1000 feet of a government housing project.

In prosecuting Ellison for these offenses, the State relied on cir-

cumstantial evidence to show constructive possession of the cocaine found in the house because there was no evidence establishing that he was in actual possession of the contraband. See *Reid v. State*, 212 Ga. App. 787, 788 (442 SE2d 852) (1994). " '(A) finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction.' [Cit.]" *Noble v. State*, 225 Ga. App. 470, 471 (484 SE2d 78) (1997). Similarly, evidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense. *Andrews v. State*, 219 Ga. App. 808, 809 (1) (466 SE2d 909) (1996). "And, where as in this case, the conviction is based on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." (Citations and punctuation omitted.) *Noble*, supra at 471.

" 'Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law.' " *Harris v. State*, 236 Ga. 242, 244-245 (1) (223 SE2d 643) (1976). It is only where the evidence or a lack of evidence, tested by all human experience, establishes a reasonable hypothesis of innocence, that this Court may declare it so as a matter of law. Id. at 245.

Under this standard, we do not find that the circumstantial evidence in this case established a reasonable hypothesis of innocence as a matter of law. Although Rucker claimed that he had exclusive possession of the contraband, the jurors, who were in the best position to judge Rucker's credibility, obviously rejected that claim and found that he jointly possessed the cocaine with Ellison. See *Chitwood v. State*, 166 Ga. App. 62 (1) (303 SE2d 307) (1983); *Andrews*, supra. Such a finding is certainly supported by the evidence showing that shortly before the deputies searched the house, Ellison had obtained crack cocaine from somewhere inside the residence and sold it to Caldwell in his front yard. And, although Rucker

also claimed ownership of the razor blade, which a deputy testified was often used in cutting crack cocaine for distribution, the jury was also authorized to reject this testimony in light of the evidence that the razor blade and a bag containing cocaine residue were found in Ellison's bedroom. Under these circumstances, we find that the evidence is sufficient to authorize a rational trier of fact to find Ellison guilty beyond a reasonable doubt of possession of cocaine with intent to distribute. See id.; *Chitwood*, supra; *Lush v. State*, 168 Ga. App. 740, 743 (9) (310 SE2d 287) (1983).

3. Finally, we find there was sufficient evidence establishing that Ellison's residence was located within 1,000 feet of a government housing project. It is well established that a witness may give his opinion regarding distances based on the witness's observations. *Fouts v. Builders Transport*, 222 Ga. App. 568, 575 (6) (474 SE2d 746) (1996); *Harris v. Collins*, 145 Ga. App. 827 (1) (245 SE2d 13) (1978). In this case, Deputy Neville, who engaged in surveillance of the residence and execution of the warrant, testified that the distance to the housing project was "well within two football fields or 600 feet. . . ." Under these circumstances, there was sufficient evidence that the home was located within 1,000 feet of a government housing project.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 29, 1998.

*Leo E. Benton, Jr.*, for appellant.
*Lydia J. Sartain, District Attorney, Leonard C. Parks, Jr., Scott A. Drake, Assistant District Attorneys*, for appellee.