OPINION OF THE COURT
Abraham G. Gerges, J.
The People move to reargue the portion of this court’s June 20, 2003 decision dismissing the first count of the indictment charging conspiracy in the first degree. The People have also submitted a memorandum of law regarding the 66 counts charging sale of a controlled substance within 1,000 feet of a school as per this court’s direction in its June 20, 2003 decision. The People have also submitted the missing grand jury minutes requested in the June 20, 2003 decision.
In deciding this motion, the court has considered the People’s moving papers, memorandum of law and supplemental memo *433 randum of law, defendants’ affirmation in opposition, the legislative material that the court supplied to both sides, oral argument, the grand jury minutes and the court file.
Because of the importance of the issue involved and in the interest of justice,[2] the court grants the motion to reargue and substitutes the following decision for that portion of the June 20, 2003 decision that dismissed the first count of the indictment and for the issues not decided by this court in its prior decision.
Factual Background as to First Count
[1] At the grand jury presentation, the People established that there existed what is commonly known as a “wheel conspiracy” to sell drugs. The conspiracy’s main objective was to sell drugs in a public housing project in Brooklyn. The evidence showed that some members of the conspiracy were under the age of 16 years (juveniles). None of the juveniles committed or participated in any class A felony drug transaction. One of the juveniles, on one occasion, was unable to supply the undercover police officer with the requested amount of drugs. The juvenile then introduced the undercover officer to codefendant, Glen Warren. The transaction, a nonclass A felony transaction, was then completed. Several months later the undercover officer directly contacted Mr. Warren and a class A felony drug transaction occurred. Thereafter, three other class A felony drug sales were completed between Mr. Warren and the undercover officer. None of the juveniles engaged in any of these subsequent transactions.
Conspiracy in the First Degree
Penal Law § 105.17 reads as follows:
“A person is guilty of conspiracy in the first degree when, with intent that conduct constituting a class A felony be performed, he, being over eighteen years of age, agrees with one or more persons under sixteen years of age to engage in or cause the performance of such conduct.”
Critical to the court’s decision is the determination of the identity of the person referred to in the statute as the person who by agreement must “engage in or cause the performance” of a class A felony.
*434 The People argue that as long as the juvenile and the adult agree that any member of the conspiracy regardless of age engages in a class A felony then the crime of conspiracy in the first degree has been violated.[3] The subject of the phrase “to engage in or cause the performance of such conduct” under this interpretation is any member of the conspiracy. It is irrelevant (under the prosecution’s reading of the statute) whether the agreement provides for the participation of the juvenile in the class A felony.
The defendants contend that the subject of the phrase “to engage in or cause the performance of such conduct” is the antecedent pronoun “one or more persons under sixteen years of age.” Thus, the crime is committed when the agreement provides that “one or more persons under sixteen years of age” “engage or causes another to engage” in the class A felony. The defendant’s reading requires that the agreement specify that the juvenile “engage in or cause the performance of’ a class A felony.[4]
Both parties claim that the statutory language is “clear and unambiguous,” so as to preclude the court from examining legislative documents or history (People v Finnegan, 85 NY2d 53, 58 [1995]; People v Floyd J., 61 NY2d 895, 896 [1984]).
The court finds that the interpretation of both parties is reasonable.[5] The court further finds that the language of the statute is ambiguous as to the terms of the agreement as it relates to the identity of the person or persons who are “to engage in or cause the performance of such conduct.” The court holds that it may look to the legislative purpose and history of Penal Law § 105.17.[6]
Penal Law § 105.17 was part of a revision of several Penal Law sections enacted under chapter 422 of the Laws of 1978. In the Assembly Memorandum in support of the enactment of chapter 422 of the Laws of 1978 (Bill Jacket), the Assembly Member wrote:
*435 “Justification: There has recently been an increasing number of cases in which adults have utilized juveniles in criminal activities to limit their own exposure to prosecution. Recent testimony before the Assembly Codes and Child Care Committees has indicated that this pattern has included using young people as ‘runners’ in numbers and drug cases and in ‘arson for profit’ schemes. This legislation is designed to make the involvement of juveniles a less attractive proposition for adults who would shield themselves behind juveniles, as well as signaling prosecutors and the courts that the legislature is seriously concerned with criminals who use children to prey on society.”
The justification for the enactment of Penal Law § 105.17 was to insure that adults would not limit their criminal exposure by using juveniles to perpetrate crimes for them. The testimony before the Assembly Codes and Child Care Committees indicates that adults were using juveniles to commit substantive crimes and the adults were avoiding criminal liability for those substantive crimes.
It is clear from this justification that the purpose of enacting chapter 422 of the Laws of 1978 was to stop adults from utilizing persons under 16 years of age from committing class A felonies, and thus avoid criminal responsibility for the higher crime. Under Penal Law article 105, if a conspiracy includes only agreement that adults commit class A felonies, then the adults would be criminally responsible for conspiracy in the second degree. This is the purpose of conspiracy in the second degree. Further, where the adult commits the class A felony, the adult can be convicted of such crime. In contrast, where the juvenile commits the class A felony, the juvenile will not have committed any crime (Penal Law § 30.00 — except for murder in the second degree and that also depends on the age of the child). It is to avoid this situation that the Legislature enacted Penal Law § 105.17.
This justification by the Assembly Member for the enactment of Penal Law § 105.17 supports the defendants’ reading of the statute.
In the purpose or general idea of the bill section of the Assembly memorandum in support of the legislation, the following is written: “Purpose and General Idea of Bill: To raise the penalty for adults who commit criminal facilitation, solicitation, or conspiracy by involving juveniles.”
*436 The People claim that the word “involving” merely means that the juvenile is part of the conspiracy and not necessarily partaking in the substantive crime. However, taking the words in context of the entire memorandum and considering that the bill does not only involve conspiracy, the court finds that the word “involving” does not mean merely agreeing but means actual commission of a substantive crime.
The People concede that the language of the criminal facilitation and criminal solicitation statutes enacted simultaneously with the conspiracy statute requires that the juvenile be an active participant in the class A felonies of those statutes. The prosecution argues that the difference in language between the criminal facilitation/solicitation statutes and the conspiracy statute indicates a different intent. There is nothing in the history of the legislation that indicates that the Legislature intended different elements for each section of chapter 422 of the Laws of 1978. The differences in language are explained because of the nature of criminal facilitation/solicitation crimes. The different nature of the crimes requires different words and is not a basis to interpret the simultaneously enacted statutes differently. Since both criminal facilitation and criminal solicitation require active involvement of the juvenile in the class A felony, the same would be true of the agreement of the conspiracy crime.
The court finds that Penal Law § 105.17 requires that the agreement provide that the juvenile “engage in or cause the performance of’ a class A felony.
The People further argue that even if the court interprets the statute to include a requirement that the agreement provide that the juvenile “engage in or cause the performance of such conduct,” they have proven in this case that the juvenile agreed to cause a class A felony. The government argues that when the juvenile introduced the adult to the undercover officer several months before the commission of the class A felonies in this case that this constitutes evidence that the juvenile agreed “to cause the performance of such conduct.” In addition to this evidence, the court has also considered the fact that the juvenile entered into an agreement to partake in an open-ended conspiracy to sell drugs.[7]
The court finds that the totality of the evidence is insufficient to show that the agreement contained a provision that the juve *437 nile or juveniles “engage in or cause the performance of’ a class A felony.
The motion to dismiss the first count of the indictment is granted. Count one is dismissed.
Sale Near a School
Sixty-six counts of the 178 counts in this indictment contain an element that a sale of a controlled substance occurred within 1,000 feet of a school (Penal Law § 220.00 [14] [b]; § 220.44 [2]).[8] The entire testimony regarding this element consists of a single question as to each location. The prosecution asked Detective Strafaci whether a certain location was within 1,000 feet of a school. The detective in each instance replied, “Yes.” It is important to note that the location was not the actual site for the drug sales. All the sales were near the address of the location.
The rules of evidence applicable at trial apply to the grand jury presentation unless specifically exempted by statute (CPL 190.30 [1]; People v Mitchell, 82 NY2d 509, 513 [1993]; People v Scott, 70 AD2d 601, 602 [1979]). When improper evidence is introduced into the grand jury, the court first examines the admissible evidence to see whether without the inadmissible evidence there is legally sufficient evidence (People v Avant, 33 NY2d 265, 271 [1973]; People v Chiarenza, 185 AD2d 679 [1992]). If there is legally sufficient evidence without the improper evidence, the court then examines the possible prejudice of the introduction into evidence of the inadmissible evidence and whether the introduction of such evidence impaired the integrity of the grand jury proceeding (People v Huston, 88 NY2d 400, 409 [1996]).
This court agrees with the People that whether a location is a certain distance from another constitutes a fact. However, where a witness has not taken a measuring device and measured the distance, any testimony regarding distance is opinion evidence and must comply with the rules of opinion evidence.
“[W]here the conclusions to be drawn from the facts ‘depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence’ recourse must be had to ‘the knowledge of men whose experience or study enables them to speak with authority’.” (People v Kenny, 30 NY2d 154, *438 157 [1972], quoting Dougherty v Milliken, 163 NY 527, 533 [1900].) However, where special skills are not necessary, a layperson may render an opinion provided a proper foundation is laid. A layperson may render an opinion as to the distance between two locations after laying a proper foundation (Ellison v State, 233 Ga App 637, 640, 504 SE2d 779, 783 [1998] [officer’s testimony that drug sale occurred within 1,000 feet of public housing, i.e., 600 feet or two football fields proper]).
Although there are available measuring devices to determine distance, this does not preclude lay opinion as to measurable facts (People v Olsen, 22 NY2d 230 [1968]). In Olsen, the lay witness testified that the speed of an automobile was 55 miles per hour in a 30-mile-per-hour zone. The Court observed that because the lay opinion was so far greater than the legal speed limit, the evidence was sufficient. The Court opined that if the testimony of the lay witness had been that the speed was 35 miles per hour the evidence may not have been legally sufficient because of its closeness to the legal limit (id. at 232). In other words, the closer the lay opinion as to distance is to the legal requirement the less sufficient the evidence is to establish a prima facie case.
Unfortunately in this case, the lay opinion evidence elicited failed to specify how close, in the layperson’s opinion, the sale was to the school.
Further, the questions taken in their context were leading questions. A leading question is a question that suggests the answer to the question (People v Mather, 4 Wend 229, 247). A question in the abstract may not be leading but when placed in context of the entire proceeding may become a leading question (Prince, Richardson on Evidence § 6-223, at 372 [Farrell 11th ed]).
In this case with the extensive presentation, on virtually the last day of presentation the People decided to establish the element of a sale within 1,000 feet of a school. The witness was recalled solely to establish this element. It is clear from the context of the proceeding and the question what was the desired answer.
The answer is also totally conclusory and does not state the beginning and ending point of the distance. The answer does not state whether the distance is close to the legal requirement. The question does not relate to the actual situs of the sale but to a location close to the sale. Further, after observing the image on numerous discs introduced into evidence at the grand *439 jury presentation, it appears that the length of at least one of the locations runs several hundreds of feet. The officer’s answer did not give the grand jury any indication as to where in this lengthy location he was using as a reference point for his opinion that such location was within 1,000 feet of a school.
Under these circumstances, the court finds that the question and answer were improper. After striking the answer, there does not remain legally sufficient evidence as to the element of the distance of the sale from a school.
People v Zelaya (232 AD2d 261 [1996]), cited by the People, is distinguishable. In that case, the witness testified that the drug sale transpired “one block away” from a school. The Appellate Division stated (at 262): “While defendant disputes that ‘one block away’ has any meaning, we note that when the statute was passed, it was understood that this distance was ‘the equivalent of two city blocks’ (Mem of State Exec Dept, 1986 McKinney’s Session Laws of NY, at 2892).”[9] Thus, in Zelaya the testimony was not conclusory but specific as to distance which was much greater than the legal requirements. The Zelaya case does not set forth the question or series of questions which were used to obtain the answer.[10]
The 66 counts which have an element of a sale within 1,000 feet of a school are dismissed. The People are granted leave to re-present the 66 counts.
Overt Act 28 of the Conspiracy and Count 64
On the previous motion the People failed to supply the court with the proper minutes regarding these counts. The People have now complied.
The motion to dismiss these counts is denied.

. The People’s motion does not cite any binding precedent or a statute that the court overlooked. The prosecution merely disagrees with the court’s reading of Penal Law § 105.17.

. The court has intentionally rephrased the People’s argument because the crux of conspiracy is not the actual commission of the crime but is the agreement to commit a class A felony. Whether a coconspirator has committed a class A felony is merely proof of the agreement.

. See n 3.

. Wliile in its original decision this court espoused the defendants’ current interpretation, the People’s reading is reasonable in light of the legal concept of “wheel” conspiracies (but see n 6 herein).

. When the Legislature wrote the conspiracy statute, the court believes that it did not consider “wheel” conspiracies involving juveniles.

. The People have not argued this point, but the evidence at the grand jury supports this fact.

. The defendants are not charged with subdivision (4) dealing with daycare centers. The evidence regarding day-care centers is ignored.

. The court does not understand the mathematics of the memorandum of the Executive Department. There are 20 city blocks to a mile, and there are 5,280 feet to a mile. Thus, 1,000 feet is more than three city blocks.

. Contrary to the People’s argument in their memorandum, the question posed and the answer given were not the sole method of obtaining the required information. The prosecution could simply have asked is there a school near the location of the sale (as opposed to an address near the sale; the detective was very familiar with the entire operation and the sale locations) and follow that question with a request as to what was that distance.