## A08A1118. BRADLEY v. THE STATE.
(665 SE2d 428)

ELLINGTON, Judge.

A Calhoun County jury found Kanoshia Bradley guilty of possession of cocaine with intent to distribute, OCGA § 16-13-30 (b); possession of marijuana with intent to distribute, OCGA § 16-13-30 (b); crossing a prison guard line with drugs, OCGA § 42-5-15 (a); and violating the oath of office of a public officer, OCGA § 16-10-1. She appeals from the judgment of conviction, contending that the evidence was insufficient to support her convictions and that the court erred in admitting certain evidence and in denying her motion to suppress. For the reasons set forth below, we affirm.

1. Bradley contends the evidence adduced was insufficient to prove beyond a reasonable doubt that she knowingly possessed cocaine and marijuana with the intent to distribute. We disagree.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to

support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.[1]

On May 10, 2005, Bradley worked as a correctional officer at the Calhoun State Prison in Morgan. She was POST-certified,[2] had taken an oath of office, and had been informed in writing of the standards of conduct for correctional officers. That morning, after Bradley had driven past the guard line and into the employee parking lot of the state prison, an officer with a drug-detecting dog walked by her car doing a routine, random drug search of the third shift employees then on state property. Signs posted outside the prison informed those entering that they would be subject to search once inside the guard line. Bradley was also informed of this policy when she began her training as an officer.

The drug dog alerted to the presence of drugs in Bradley's car. Prison employees searched the car, but found no contraband in it. After Bradley consented to a search of her person and personal effects, prison employees discovered a large cookie box concealed within Bradley's book bag. The cookie box contained a duct tape-wrapped plastic bag, which contained smaller bags of powder and rock cocaine and marijuana. The cocaine weighed over 25 grams. The marijuana weighed almost four ounces. According to an investigator, the drugs had a street value of $3,500 to $3,600. The investigator testified that he took out warrants for possession with intent to distribute based on the large quantity of drugs found.[3] The investigator also testified that the cookie box exuded a strong odor of marijuana, even before its contents were unpacked.

---

[1] This recitation of facts is based, in part, on evidence that Bradley contends was seized as a result of an illegal search. We find no merit to that contention. See Division 3, infra.

[2] To be "POST-certified" a peace officer must complete a basic training course established by the Georgia Peace Officer Standards & Training Council. See OCGA §§ 35-8-8, 35-8-9, 35-8-24.

[3] Although not specifically enumerated as error, Bradley contends the investigator was not qualified, tendered, or admitted as an expert, and that, therefore, his testimony was not competent evidence of an intent to distribute, citing *Stephens v. State*, 219 Ga. App. 881, 883 (1) (467 SE2d 201) (1996) (physical precedent only). Although there was no explicit tender of the investigator as an expert in drug distribution, the foundational requirement was met in that the officer's qualifications as a drug task force officer, including his training in marijuana identification and drug interdiction, were set out on the record. See *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998) (although the police officers were not formally tendered by the State as expert witnesses, the prosecutor laid the foundation for their opinions by eliciting testimony about their experience in drug enforcement, training in drug interdiction, and knowledge of the customary methods employed in the use and sale of cocaine); see also *Lindley v. State*, 225 Ga. App. 338, 341 (1) (484 SE2d 33) (1997) (trial court implicitly accepted officer as an expert even though the officer was not tendered to the court as an expert by the State but testified at length as to his experience in drug investigations).

Bradley disavowed knowledge of the drugs. She testified that she picked up the cookie box from a man she did not know at the request of her friend Tiffany and agreed to deliver it to a third person inside the prison known to her as "Will" or, possibly, as "Officer Williams." Because she was in a hurry to get the package and to get to work, she testified she failed to notice anything unusual about the box, such as whether it exuded the aroma of marijuana or that it lacked the rattling sound of cookies.

The Georgia Controlled Substances Act makes it unlawful for any person to possess or to have under his or her control cocaine or marijuana. OCGA §§ 16-13-21 (4), (16); 16-13-25 (3) (P); 16-13-26 (1) (D); 16-13-30 (a). The evidence adduced revealed that Bradley had the contraband in her possession, and she admitted placing the cookie box into her personal bag. Whether Bradley was a knowing participant or an unwitting courier was for the jury to decide. As we have explained,

> [w]hether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, and the defendant's statement, than is a court of law.

(Citation and punctuation omitted.) *Ellison v. State*, 233 Ga. App. 637, 639 (2) (504 SE2d 779) (1998). In this case, Bradley's friend Tiffany did not come forward, and there was no evidence substantiating Bradley's testimony that Tiffany, Tiffany's friend, or Will actually existed. The jury was authorized to infer from the evidence that it was unreasonable for a corrections officer to take a suspicious package from an unknown person into a prison to give to an unknown recipient. It would also be unreasonable for a drug dealer to give such a large quantity of drugs to a correctional officer if he did not trust that person to make the delivery and to protect his identity. Given the evidence and the reasonable inferences from it, the jury was authorized to find that Bradley knowingly possessed the contraband and that the circumstances excluded every reasonable hypothesis except her guilt. Id. at 639-640 (2).

Further, given the large amount and variety of contraband, its high street value, and that Bradley was taking it inside a heavily

guarded prison facility, the jury was authorized to infer that she intended to distribute it to others rather than to use it herself. See, e.g., *Stewart v. State*, 232 Ga. App. 565, 566 (1) (502 SE2d 502) (1998) (jury authorized to infer that 4.9 grams of cocaine was sale amount not personal use amount); *Bacon v. State*, 225 Ga. App. 326, 327 (483 SE2d 894) (1997) (jury authorized to infer that 9.8 grams of cocaine was distribution amount). Consequently, the evidence was sufficient for the jury to find beyond a reasonable doubt that Bradley possessed the cocaine and marijuana with the intent to distribute it.

2. Bradley contends her conviction for violating her oath of office must be reversed because the State failed to adduce evidence proving the essential elements of the offense set forth in OCGA § 16-10-1. We disagree.

OCGA § 16-10-1 provides: "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years." As we explained in *Jowers v. State*, 225 Ga. App. 809, 810-813 (2) (484 SE2d 803) (1997), to prove a violation of this Code section, the State must present evidence that the defendant violated the terms of the oath actually administered and that those terms were from an oath "prescribed by law," that is, one that the "legislature" required of a public officer "before entering the duties of [his or her] office." Id. at 810-812 (2).

Bradley was indicted for violating her oath of office as a correctional officer, and the terms of oath she was alleged to have taken were set forth in the indictment. The prosecutor, during the direct examination of Bradley's warden, introduced State's Exhibit 16, a copy of an oath of office that Bradley signed on March 24, 2004; and it was admitted into evidence over a best evidence objection.[4] The warden testified that Bradley, and all correctional officers, were required to take the oath, and that bringing cocaine into the prison violated the terms of the oath. State's Exhibit 16 shows that Bradley, in the presence of an attesting witness, signed a document stating that she took the following oath:

I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States of America and the State of Georgia, and that I will faithfully perform and discharge the duties of my office without malice or partiality, to the best of my ability.

---

[4] The copies were admissible as business records of the prison as they were kept in the regular course of prison business as the warden testified. See OCGA § 24-3-14. See *Oldham v. State*, 205 Ga. App. 268, 270 (422 SE2d 38) (1992).

I further swear (or affirm) that I am not the holder of any unaccounted for public money due this state or any political subdivision or authority thereof; that I am not the holder of any office of trust under the government of the United States, and other state, or any foreign state which I am prohibited from holding under the laws of the State of Georgia; and that I am otherwise qualified to hold office according to the Constitution and the laws of Georgia.

The terms of the oath Bradley signed were set out in Exhibit 16 exactly as averred in the indictment, and the oath Bradley took was prescribed by law. OCGA § 42-5-31. This evidence was sufficient for the jury to find Bradley guilty beyond a reasonable doubt of violating OCGA § 16-10-1. See *Jowers v. State*, 225 Ga. App. at 810-813 (2) (discussing elements of offense).

3. Bradley contends the trial court erred in denying her motion to suppress, arguing that her car was stopped without probable cause and subjected to an illegal search by a drug-detecting dog. As we have held:

The issue in this case is whether the Department of Corrections official did have lawful authority to search the automobile of a prison employee parked inside the "guard line" of the prison, as he represented. We agree with the opinion of the Attorney General that corrections officials have the authority to condition a visit to a corrections institution on the visitor's willingness to submit to a search for contraband or other items prohibited by OCGA § 42-5-15. See Op. Atty. Gen. 74-146 (Nov. 7, 1974). At the prison in question, a sign was posted at the entry of the premises, which defendant would have passed daily as he reported to work, giving notice that all vehicles passing the "guard line" of the prison were subject to search. Under these circumstances, we find that prison officials also have authority to search the vehicle of an employee parked inside the "guard line." . . . By driving his automobile onto the premises, defendant consented to such a search.

*Howard v. State*, 185 Ga. App. 465, 466-467 (1) (364 SE2d 600) (1988).

The circumstances of this case are substantially similar to those in *Howard*. Therefore, the trial court did not err in denying Bradley's motion to suppress. See id.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JULY 15, 2008.

*Richard Parker*, for appellant.

*Joseph K. Mulholland, District Attorney, Samuel M. Olmstead, Assistant District Attorney*, for appellee.