312 Ga. 369
FINAL COPY

S21A0706. WILLERSON v. THE STATE.

LAGRUA, Justice.

Bryant Willerson was convicted of murder in connection with the beating death of William McClain. On appeal, Willerson contends that the evidence presented at his trial was insufficient to find him guilty beyond a reasonable doubt of the crime of which he was convicted. He also argues that his trial counsel rendered constitutionally ineffective assistance for failing to properly impeach a witness. For the reasons stated below, we affirm.[1]

---

[1] McClain was killed on June 12, 2011. On August 28, 2012, a Richmond County grand jury indicted Willerson for malice murder and felony murder predicated on aggravated assault. On September 7, 2012, Willerson filed a motion for psychological evaluation, which the trial court granted on October 26, 2012. Willerson underwent psychological evaluations in November 2012 and was determined to be competent to stand trial. At a jury trial held from September 21 to 23, 2015, the jury found Willerson guilty but mentally ill on both counts. On September 23, 2015, the trial court sentenced Willerson to life without the possibility of parole for malice murder. The felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). On September 30, 2015, Willerson timely filed a motion for new trial, which he amended on July 6, 2018. On July 30, 2019, the trial court denied Willerson's amended motion for new trial. Willerson then timely filed a notice of appeal on August 22, 2019. The appeal was docketed to the April 2021 term of this Court and was submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that Melvin Wright, Jr., was a security guard at an empty hotel in Augusta, and was hired in part to keep trespassers off the hotel property. Around 4:30 p.m. on June 11, 2011, Wright was at a nearby barbershop when he learned that someone had entered the hotel property. When Wright returned to the hotel property, he encountered Willerson and informed him that he was not permitted to be on the premises. In response, Willerson explained that he was on the property looking for a man who had stolen ten dollars from him, and that this man normally stayed in either room 123 or 124. Wright escorted Willerson off the property but assured Willerson that he would look out for the man.

Around 11:30 p.m., Wright checked rooms 123 and 124 to see if the man Willerson referenced was on the premises. Wright did not find anyone in room 123, but he could tell that someone had been staying in the room. Wright noticed nothing else out of the ordinary in either room. After completing his search of the two rooms, Wright retired for the night to a different room in the hotel.

Around 2:30 a.m., Wright awoke to a "rumbling" noise. He walked out onto his room's outdoor balcony, heard glass breaking and fighting from the direction of rooms 123 and 124, and called the police. Wright recognized Willerson's voice shouting, "You stole my ten dollars, you shouldn't have stole my ten dollars," and "[A]s much as I [done for you,] you had to steal my ten dollars, why you steal my ten dollars?" Wright looked over the balcony and saw Willerson striking McClain, who fell onto his back. At that moment, Wright believed McClain was dead because McClain's face was covered in blood and he was lying "stiff" and motionless.

Moments after the altercation, the police arrived at the hotel and found McClain's half-naked body dead outside room 124. Near the body, the police recovered a lamp base and separate lamp post, both appearing to have blood on them. Forensic testing showed that the DNA profiles obtained from the blood samples, and from a hair fiber obtained from the lamp post, matched McClain's DNA.

The police began searching the hotel property for Willerson, whom they located in room 124 — hiding inside the rolled up

window curtains — and subsequently placed him under arrest. The police noted that Willerson had no visible injuries but observed what appeared to be blood spatter on his boots and the back of his shirt. Later testing revealed that the DNA obtained from the blood on Willerson's shirt matched McClain's DNA. A crime scene investigator testified that the blood spatter pattern on Willerson's shirt was "completely consistent with a weapon, if you're beating someone and you raise a weapon up, blood falling from that weapon," noting further that the spatter pattern indicated that Willerson had swung downward and hit McClain while McClain was lying on the ground.

McClain had multiple lacerations and facial fractures as the result of at least seven strikes to his face and head and had additional bruising on his lower torso in a pattern consistent with blunt-force blows from a long, "tubelike" object. McClain's death was caused by these blunt-force injuries.

At trial, Willerson claimed self-defense, relying heavily on a pre-trial psychological evaluation conducted by Dr. Michael Vitacco,

a licensed psychologist. Dr. Vitacco testified that, during the evaluation, Willerson revealed that he and McClain had a previous relationship and that McClain owed him money. Willerson also told Dr. Vitacco that on the night of the incident, he walked into the hotel room and discovered McClain masturbating on the bed, after which McClain propositioned Willerson for sex. Willerson told Dr. Vitacco that when he rejected McClain's advance and attempted to leave, McClain attacked him with a lamp. Willerson said he was afraid that McClain would hurt him, so he "[grabbed the] lamp and began hitting [McClain] with it." Willerson also told Dr. Vitacco that as a child, he was frequently abused by his parents and sexually abused and harassed by his brother. Dr. Vitacco noted that Willerson struggled with various mental disorders, including post-traumatic stress disorder, anxiety disorder, psychotic disorder, and major depressive disorder. However, Dr. Vitacco testified that Willerson's symptoms were in remission at the time of the evaluation because of various medications Willerson was taking. Dr. Vitacco concluded that Willerson was "able to tell right from wrong," was sane at the

5

time of the incident, and was competent to stand trial.

1. Willerson contends that the evidence was insufficient to find him guilty beyond a reasonable doubt of malice murder.[2] We conclude that this claim lacks merit.

When considering the sufficiency of the evidence, this Court views the evidence "in the light most favorable to the verdict and evaluate[s] whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Davenport v. State*, 309 Ga. 385, 388 (1) (846 SE2d 83) (2020) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). At trial, Willerson claimed that he acted in self-defense, and the trial court instructed the jury to consider self-defense as an affirmative defense. "[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself

---

[2] As noted above in footnote 1, Willerson's felony murder count was vacated by operation of law. Accordingly, his enumerations of error with regard to that count are moot.

6

or herself or a third person[.]" OCGA § 16-3-21 (a). "[Deadly force] is not justified if the degree of force used by the defendant exceeds that which a reasonable person would believe necessary to defend against the victim's unlawful actions." *Harris v. State*, 274 Ga. 422, 423 (1) (554 SE2d 458) (2001). See also *Clark v. State*, 271 Ga. 27, 29 (2) (518 SE2d 117) (1999) ("The use of excessive force or unlawful force while acting in self-defense is not justifiable."). "When a defendant presents evidence that he was justified in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Birdow v. State*, 305 Ga. 48, 50 (1) (823 SE2d 736) (2019).

Here, the evidence presented at trial was sufficient to disprove beyond a reasonable doubt the claim of self-defense. Willerson was heard shouting about his missing ten dollars just before McClain was seen motionless on the ground and was found hiding in the curtains of a nearby room. The medical examiner testified that McClain suffered multiple contusions, lacerations, bruises, and facial fractures and that the lacerations on McClain's face were the

7

result of multiple strikes. One of the officers who arrested Willerson testified that Willerson had not suffered any visible injuries at the time of his arrest, and the crime scene investigator confirmed that the blood spatter pattern found on Willerson's clothing was consistent with blood spatter caused by striking a person with an object while the person was lying on the ground. Finally, the blood on Willerson's clothes contained only McClain's DNA, and not Willerson's.

Contrary to Willerson's assertion that his history of abuse and mental illness supports his claim of self-defense, "the subjective fears of a particular defendant are irrelevant in the evaluation of this defense," and "[t]he critical factor in a justification defense is whether a defendant acted with the fear of a reasonable person under the circumstances." *O'Connell v. State*, 294 Ga. 379, 382 (3) (754 SE2d 29) (2014) (emphasis omitted). Given the brutality of the attack against the victim, the extent of the victim's injuries, and the fact that Willerson suffered no injuries in the altercation, the evidence presented by the State was sufficient to contradict the self-

8

defense claim. When viewed in the light most favorable to the verdicts, "the evidence presented at trial . . . was easily sufficient to authorize a rational jury to reject [Willerson]'s assertion that he killed [McClain] in self-defense and to instead find him guilty beyond a reasonable doubt" of the charged crimes. *Velasco v. State*, 306 Ga. 888, 890-891 (1) (b) (834 SE2d 21) (2019). Accordingly, this enumeration is without merit.

2. Willerson also contends that his trial counsel rendered constitutionally ineffective assistance by failing to properly confront Wright with a prior inconsistent statement in accordance with OCGA § 24-6-613 (b).[3] We disagree.

At trial, Wright testified that Willerson appeared "very angry" during their initial encounter at the hotel. However, according to a police report compiled by Sergeant Chris Langford, one of the

---

[3] OCGA § 24-6-613 (b) provides:
[E]xtrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require. . . .

investigating officers, Wright told the police immediately after the incident that Willerson "seemed fine" and not "overly upset about the money." The defense called Sergeant Langford as a witness at trial and addressed Langford's police report. Defense counsel asked, "Melvin Wright told you that Bryant Willerson seemed fine, did not seem overly upset about the money[?]" The prosecutor objected to hearsay, and defense counsel responded by asserting that the statement fell within the prior inconsistent statement exception to hearsay. The prosecutor countered by noting that Wright, who had previously testified, had not been given the chance to explain his statement during his testimony. The trial court sustained the prosecutor's objection, and defense counsel never recalled Wright as a witness.

At the motion for new trial hearing, Willerson asked trial counsel if his decision not to address the prior inconsistent statement with Wright was part of his trial strategy. Trial counsel responded, "Could have been, could not have been. I don't know."

To prevail on a claim of constitutionally ineffective assistance

10

of counsel, Willerson must show that his trial counsel's performance was deficient and that such deficient performance prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To satisfy the deficiency prong, [Willerson] must show that trial counsel performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Gaston v. State*, 307 Ga. 634, 636 (2) (837 SE2d 808) (2020) (citation and punctuation omitted). To show that trial counsel's deficient performance was prejudicial, "[Willerson] must show a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Williams v. State*, 305 Ga. 776, 778 (2) (827 SE2d 849) (2019) (citation and punctuation omitted). "If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other." *Hendrix v. State*, 298 Ga. 60, 61-62 (2) (779 SE2d 322) (2015).

Pretermitting whether Willerson's trial counsel performed deficiently, Willerson has failed to demonstrate prejudice. Even if Willerson had successfully impeached Wright's testimony and cast doubt on the assertion that Willerson was angry prior to the altercation, this point bears little relevance to Willerson's argument that he acted in self-defense. In fact, as detailed above, there was ample evidence to support a finding that Willerson's attack was not an act of self-defense. Thus, Willerson cannot show a reasonable probability that the outcome of the trial would have been different had defense counsel successfully impeached Wright's testimony on that point. Accordingly, his claim of ineffective assistance fails. See *Ferguson v. State*, 297 Ga. 342, 344-345 (3) (773 SE2d 749) (2015) (counsel's failure to adduce a prior inconsistent statement did not prejudice the outcome because "even to the extent [the witness's] prior statement could have served to impeach his credibility, it was unlikely to have had any impact at all on the verdicts").

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2021.

Murder. Richmond Superior Court. Before Judge Blanchard.

*Lucy D. Roth*, for appellant.

*Jared T. Williams, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.