**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2024**

# In the Court of Appeals of Georgia

A23A1506. OLSEN v. THE STATE.

RICKMAN, Judge.

While working on-duty as a DeKalb County Police Officer and responding to a call regarding a possibly demented person, Robert Olsen shot and killed Anthony Hill, an unarmed man in the midst of a mental health crisis. Olsen was charged with several crimes stemming from the shooting, including two counts of felony murder — one predicated on aggravated assault and the other predicated on violation of oath by a public officer based upon a violation of the DeKalb County Police Department's Use of Force Policy ("UFP"). Olsen maintained throughout that he acted in self-defense. Following a jury trial, Olsen was acquitted of the felony murder charges but convicted on the predicate offenses. He argues on appeal that the trial court made several errors

with respect to the admission and treatment of the UFP over his objections, confusing the jury and depriving him of a fair trial. We agree and for the reasons set forth below, we reverse Olsen's convictions on aggravated assault and violation of oath by a public officer based upon a violation of the UFP. We conclude further that, although the evidence was legally sufficient to sustain Olsen's conviction on aggravated assault such that he may be retried on that count should the State opt to do so, the evidence was legally insufficient with respect to the crime of violation of oath by a public officer based upon a violation of the UFP.

The facts of this case are tragic. In March 2015, Olson responded to a 911 call reporting a suspicious person, potentially demented, at an apartment complex. The call was made by the manager of the apartment complex, who, along with the assistant manager, observed Hill from the window of the leasing office and determined that he "was not acting normal." Hill, wearing shorts but no shirt or shoes, was seen lying face down on the concrete, crawling along the ground, and hanging from balcony railings. He ultimately worked his way up the stairs to the leasing office and began knocking on the door. Believing that Hill may have been on drugs, the women locked the office door and declined to open it. They placed two additional 911 calls urging law

enforcement to hurry after Hill removed all of his clothing and they feared he was going to jump from the balcony. At no time did the women mention to the 911 dispatcher that Hill was a resident of the apartment complex.

Olsen was the first law enforcement officer to arrive on the scene. As he entered the apartment complex, Olsen observed Hill, still naked, crouching in the grass between two apartment buildings. He slowly drove his car around one of the buildings and parked. As Olsen exited the vehicle, Hill stood and began running toward him. Olsen drew his service weapon and backpedaled, shouting twice for Olsen to "Stop!" Hill, undeterred, continued running toward Olsen. Olsen fired two shots, killing Hill. Hill was approximately six to eight feet from Olsen when Olsen fired his weapon. When backup officers arrived, Olsen falsely reported to one of them that Hill had "started pounding on him" before he fired his weapon.

Olsen was arrested and charged with six crimes: felony murder predicated upon aggravated assault (Count 1); felony murder predicated upon a violation of oath by a public officer based upon a violation of the UFP (Count 2); aggravated assault (Count 3); violation of oath by a public officer based upon a violation of the UFP (Count 4);[1]

---

[1] Olsen was also charged, in the alternative, with the crime of violation of oath by a public officer for shooting Hill with a firearm in violation of OCGA § 17-4-20 (b),

3

making a false statement (Count 5); and violation of oath by a public officer based upon making a false statement (Count 6). Olsen maintained at the time of the shooting and throughout the course of the trial that his use of deadly force against Hill was justified because he acted in self-defense.

Prior to trial, Olsen filed a motion in limine challenging the admissibility of the UFP. Olsen argued, among other things, that several provisions of the UFP were in conflict with Georgia's law of self-defense and that its admission would confuse the jury by giving the false impression that it (the UFP) defined Olsen's right to use deadly force. Further, Olsen asserted that a UFP violation, under the law and by its own express terms, could not form the basis of a criminal conviction. Olsen also filed a motion requesting that the trial court require the State to identify which specific provisions of the UFP Olsen was accused of violating. The trial court denied Olsen's motions.

Ultimately, the UFP was admitted in its entirety. At the time of its admission, the trial court instructed the jury that the UFP was being admitted as evidence that

which governs the use of deadly force by a police officer while in the process of making an arrest. The trial court directed verdict in favor of Olsen on that charge, however, because there was no evidence that Hill was a suspected felon at the time of the shooting.

Olsen committed the offenses alleged in Counts 1 through 4 of the indictment and that it "[could] be used to assess the reasonableness of [Olsen's] use of a handgun to shoot [Hill]." Olsen renewed his objections to the admissibility of the UFP throughout the course of the trial. The trial court declined to give Olsen's proposed limiting instruction with respect to the jury's consideration of the UFP.

The jury acquitted Olsen of both felony murder charges, but convicted him of aggravated assault, violation of oath by a public officer based upon a violation of the UFP, and violation of oath by a public officer based upon making a false statement.[2] He filed a motion for new trial, which the trial court denied. This appeal followed.

1. Olsen argues that the trial court erred by admitting into evidence the UFP because numerous provisions conflict with the law governing self-defense and, therefore, were null, void, and of no force or effect with respect to the criminal charges lodged against him. Further, Olsen asserts that the trial court abused its discretion by allowing the State to argue that the UFP defined reasonableness in the context of Olsen's use of deadly force.

---

[2] Olsen was also found guilty of making a false statement, but that count merged into violation of oath by a public officer based upon making a false statement for sentencing purposes. He has not challenged his conviction on that count.

In Georgia, the law of self-defense is the same for a police officer as it is for any other citizen. Regarding the use of deadly force, Georgia law provides as follows:

> [A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). Moreover, "[a] person who uses threats or force in accordance with Code Section 16-3-21 . . . has no duty to retreat and has the right to stand his or her ground and use force as provided in [the statute], including deadly force." OCGA § 16-3-23.1. But "[d]eadly force is not justified if the degree of force used by the defendant exceeds that which a reasonable person would believe necessary to defend against the victim's unlawful actions." *Willerson v. State*, 312 Ga. 369, 372 (1) (863 S.E.2d 50) (2021). The reasonableness of one's belief that deadly force was necessary in any given situation is a determination left exclusively to the jury. See *Jennings v. State*, 363 Ga. App. 170, 174 (1) (869 SE2d 93) (2022).

Significantly, the self-defense statute expressly nullifies any local rules or policies in conflict with its provisions:

Any rule, regulation, or policy of any agency of the state or any ordinance, resolution, rule, regulation, or policy of any county, municipality, or other political subdivision of the state which is in conflict with this Code section shall be null, void, and of no force and effect.

OCGA § 16-3-21 (c). Thus, according to Georgia law, the use of deadly force is justified upon a reasonable belief that such force is necessary (1) to prevent death or great bodily injury to oneself or a third person, or (2) to prevent the commission of a forcible felony; one has no duty to retreat if deadly force is justified; and any local rules or policies in conflict with that law are null and void. See OCGA §§ 16-3-21 (a), (c); 16-3-23.1.

In contrast, the UFP, an internal training document created by the DeKalb County Police Department "for departmental use only," contains numerous directives regarding the lethal use of force aimed at achieving the laudable goal of preserving life — both that of the public and that of the officers — but which nevertheless conflict with OCGA § 16-3-21 (a). For example, the UFP instructs: "Officers must exhaust every means available of non-lethal force, prior to utilizing deadly force;" "Any threat used to justify the use of deadly force must be immediate

and there must be no other possible remedy;" and "[M]any crimes that could be technically classified as 'forcible felonies' would not be life threatening enough to justify the use of deadly force to prevent them." Because each of these directives, and others contained in the UFP, are in conflict with Georgia's law of self-defense, they were null, void, and of no force or effect within the context of a criminal trial in which Olsen's sole defense was self-defense. See OCGA §§ 16-3-21 (a), (c); 16-3-23.1; see also *Henry County Bd. of Ed. v. S.G.*, 301 Ga. 794, 798-803 (2) (804 SE2d 427) (2017) (recognizing that student's expulsion for fighting on school grounds in violation of student handbook could not be sustained if the student was lawfully acting in self-defense); *Allen v. City of Atlanta*, 235 Ga. App. 516, 517-518 (510 SE2d 64) (1998) (holding officer's suspension for firing his weapon in violation of employee work rule could not stand since rule was invalid due to its contravention of state self-defense law).

The trial court, therefore, erred by admitting into evidence the UFP without first identifying and redacting those portions of the policy that conflict with OCGA § 16-3-21 (a).[3] See OCGA § 16-3-21 (c). The trial court's error in admitting the UFP

---

[3] Olsen contends that the UFP in its entirety should have been excluded from evidence. Because the State failed to identify those portions of the UFP that it alleged

was compounded when the jury was instructed that the policy could be considered "to assess the reasonableness" of Olsen's use of deadly force with respect to the charges of aggravated assault and violation of oath by a public officer based upon a violation of the UFP (as well as the felony murder charges premised thereon). And compounded further when, in closing argument, the State repeatedly emphasized to the jury that the UFP provided the legal standard through which to determine whether Olsen's use of force was reasonable.

Given that the entirety of Olsen's defense — and the very question the jury was being called upon to answer — was whether Olsen was justified in using lethal force, we cannot say that it is highly probable that the erroneous admission of the UFP (to the extent that it conflicted with Georgia's self-defense law) did not contribute to the jury's verdict. See *Strong v. State*, 309 Ga. 295, 316 (4) (845 SE2d 653) (2020) ("The trial court's errors in admitting . . . evidence require reversal of Appellant's convictions unless they can be deemed harmless, meaning that it is highly probable that the error did not contribute to the verdict") (citation and punctuation omitted);

---

Olsen to have violated, however, we cannot otherwise determine whether the non-conflicting portions of the UFP were relevant and/or admissible at trial. See generally *Bedley v. State*, 189 Ga. App. 90 (2) (374 SE2d 841) (1988) (affirming the admission of a use of force policy in a criminal trial for simple battery).

see generally OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . .); *Render v. State*, 267 Ga. 848, 850 (2) (483 SE2d 570) (1997). Accordingly, we reverse Olsen's convictions on aggravated assault and violation of oath by a public officer based upon a violation of the UFP.

2. Because the State may desire to retry Olsen, we must also examine whether the evidence was legally sufficient to sustain his convictions. See *Strong*, 309 Ga. at 318, n.25 (4).

(a) As to the crime of aggravated assault, the evidence presented at trial, even absent the conflicting provisions of the UFP, was sufficient for a reasonable jury to conclude that Olsen shot Hill — a naked, unarmed man in the midst of a mental health crisis — without legal justification. See OCGA § 16-3-21 (a); see also OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon . . . "); see also OCGA § 16-5-20 (a) (1). To the extent that Olsen believed that Hill posed a threat of death or great bodily injury to him or another or that Hill was attempting to commit a forcible felony, or that lethal force was necessary to defend against that threat, the admissible evidence supported a finding

that such a belief was not reasonable. See *Craw v. State*, 369 Ga. App. 231, 237 (1) (893 SE2d 134) (2023) ("[Q]uestions about the existence of justification are for the jury to resolve, and the jury may reject any evidence in support of a justification defense and accept evidence that a shooting was not done in self-defense."); *Fields v. State*, 285 Ga. App. 345, 346 (1) (646 SE2d 326) (2007) ("The jury was entitled to conclude that [appellant] was not justified in using force greater than that necessary to defend himself.").

(b) We cannot say the same with respect to Olsen's conviction on the crime of violation of oath by a public officer based upon Olsen's violation of the UFP.

OCGA § 16-10-1 provides that, "[a]ny public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years." In order to prove such a violation, "the State must present evidence that the defendant violated the terms of the oath actually administered and that those terms were from an oath prescribed by law, that is, one that the legislature required of a public officer before entering the duties of his or her office." (Citation and

punctuation omitted.) *Bradley v. State*, 292 Ga. App. 737, 740 (2) (665 SE2d 428) (2008).

The oath administered to Olsen as he was sworn in as a DeKalb County Police Officer included an affirmation to "support and defend the Constitution of the United States of America and the Constitution of the State of Georgia . . . [and] faithfully observe all the rules, orders, and regulations of the DeKalb County Police Department."

The indictment charged Olsen with a felony for violating his oath by shooting Hill with a handgun in violation of the UFP. As previously discussed, to the extent the UFP conflicts with OCGA § 16-3-21 (a), a violation of its provisions cannot not support a criminal conviction. See OCGA § 16-3-21 (c). But regardless, assuming that Olson's oath extended to and encompassed the UFP, the policy explicitly included the following declaration:

> This policy is for departmental use only and does not apply in any criminal or civil proceeding. . . . Violations of this policy will form the basis for departmental administrative sanctions only.

Thus, in the absence of conflicting statutory authority, a violation of the UFP, by its express terms, could not form the basis of a criminal conviction. It follows that

the State may not retry Olsen for breach of violation of oath by a public officer based upon a violation of the UFP. See generally *Prater v. State*, 273 Ga. 477, 481 (4) (545 SE2d 864) (2001) ("It is axiomatic that where an appellate court determines that the evidence at a first trial was insufficient to authorize a guilty verdict, a second prosecution is barred by the Double Jeopardy concerns expressed in our Georgia Code, as well as our State and Federal Constitutions.").

*Judgment affirmed in part, reversed in part. Dillard, P. J., and Pipkin, J., concur.*