**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 14, 2024**

# In the Court of Appeals of Georgia

A23A1317. COOPER v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Eugene Ezra Cooper was convicted of trafficking in more than 400 grams of cocaine.[1] He now appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the verdict because it was circumstantial and did not rule out every reasonable hypothesis of innocence, and (2) he received ineffective assistance of counsel due to trial counsel's failure to object to opinion evidence offered by the arresting officer. Because the evidence

---

[1] OCGA § 16-13-31 (a) (C) ("any person who . . . is in possession of 28 grams or more of . . . any mixture with a purity of 10 percent or more of cocaine . . . in violation of this article commits the felony offense of trafficking in cocaine . . .").

authorized the verdict, and trial counsel's performance was not constitutionally deficient, we affirm.

Construed in favor of the verdict,[2] the evidence shows that an on-duty Greene County sheriff's deputy observed a Dodge Charger following too closely[3] on Interstate 20 and proceeded to make a traffic stop. On the interstate shoulder, the deputy approached the Charger from the passenger's side and engaged the occupants, Jaleesa Branche (the driver) and Cooper (the passenger). Immediately, the deputy smelled an "overwhelming" odor of marijuana coming from inside the car, and he could "see cell phones throughout the vehicle." Cooper handed the deputy Branche's driver's license and the car registration, and the deputy asked Branche to step outside of the car; as they stood behind her car, the deputy explained why he pulled her over.

As they spoke, the deputy asked Branche where they were coming from, and Branche said they had spent the night in Atlanta at a friend's house. The deputy called in their identities to dispatch, and as dispatch reported back on the status of Branche's

---

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[3] See OCGA § 40-6-49 (a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.").

driver's license, the deputy separately approached Cooper to ask him where they had been driving from. Cooper told the officer that they had only been to Atlanta for the day, "just driving." Cooper also explained that the car belonged to his fiancee, who knew he had the vehicle but did not know that he was with Branche.

Based on the odor of marijuana, the deputy determined that he would search the vehicle, so he radioed for a second deputy to assist at the scene. The back-up deputy arrived as the first deputy was writing Branche a warning, and the first deputy then retrieved Cooper from the passenger seat. After consensually patting Cooper down,[4] the deputy informed Cooper and Branche that their accounts of their whereabouts were inconsistent, and due to the odor of marijuana, he would be conducting a search of the vehicle. At this point, Cooper and Branche stood outside of the vehicle with the back-up deputy.

In the search, the deputy found a handbag in the trunk containing what appeared to be a shrink-wrapped kilogram of cocaine. Upon seeing the suspected contraband, the deputy walked over to Cooper and placed him in handcuffs. As the deputy returned to the Charger, Cooper asked the back-up deputy what the arresting

---

[4] The deputy found no contraband but removed a pocket knife Cooper had clipped to his front pocket.

deputy had said he found, and the back-up deputy replied "cocaine." In response, Cooper said "yeah," closed his eyes, and dropped and shook his head.

The suspected cocaine was later confirmed to be a 55.5 percent pure mixture of cocaine weighing 1,000.41 grams. Based on these events, Cooper and Branche were charged in a joint indictment with one count of trafficking more than 400 grams of cocaine. A jury returned a guilty verdict against Cooper and acquitted Branche. Cooper now appeals.

1. Cooper contends that the evidence was insufficient to support the guilty verdict because the evidence that he possessed the cocaine was circumstantial and did not exclude every other reasonable hypothesis of his innocence. We disagree.

As a threshold matter, when an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal

4

conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[5]

Cooper points out that there was no evidence that he had direct physical control over the cocaine, so the State had to prove that he constructively possessed it: "A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[6]

> Importantly, constructive possession must be based on a connection between the defendant and the object that is more than spatial proximity. As a result, when it is established wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Nevertheless, questions of reasonableness in this regard are generally decided by the jury.[7]

---

[5] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[6] (Punctuation omitted.) *Copeland v. State*, 327 Ga. App. 520, 522-523 (1) (759 SE2d 593) (2014).

[7] (Punctuation omitted.) *Jones v. State*, 369 Ga. App. 339, 341-342 (1) (893 SE2d 460) (2023), quoting *Alvarez-Maldonado v. State*, 359 Ga. App. 500, 503-504 (1) (859 SE2d 481) (2021). See also OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the

As explained by the Supreme Court of Georgia,

> questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and that finding will not be disturbed unless the verdict of guilty is unsupportable as a matter of law. In other words, *whether the evidence shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law.*[8]

Here, Cooper argues that the direct evidence only shows that a kilogram of cocaine was found in a car that he did not own or drive, and in the absence of any additional direct evidence, the jury was not authorized to find that he possessed the cocaine. But the circumstantial evidence shows more. For example, Cooper was tied to the vehicle because, according to him, it was his fiancee's, and he was using it with her permission. Also according to Cooper, the fiancee did not know about Branche, so at a minimum, this demonstrated Cooper's arrangement of their use of the vehicle,

---

guilt of the accused.").

[8] (Citations and punctuation omitted; emphasis supplied.) *Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017).

regardless of who was driving it. In other words, Cooper procured the vehicle and allowed Branche to drive it.

Also, when asked about their travel that day, Cooper told the deputy that they were "just driving" and making only a day trip to Atlanta. This conflicted with what Branche had told the deputy moments earlier: they had spent the night in Atlanta with a friend of Cooper's. The discrepancy was not a trivial one that might arise because of nervousness or a slip of the tongue; rather, it was a fundamentally different story about their whereabouts over the last two days. Such a conflict evinces an intent to mislead officers about the nature of their travel.

Further, and most important, Cooper's arrest shed light on his knowledge of the cocaine. As recounted by the back-up deputy and depicted in the body cam video shown to the jury, upon being handcuffed, Cooper asked what had been found in the vehicle, and when he was told "cocaine," Cooper's response was to say "yeah," and hang his head, slowly shaking it. The video depiction is clear, and it strongly supports a factfinder's interpretation of it as a response of disappointment and regret but not surprise. Although Cooper argues that this response could evidence Cooper's disappointment in his fiancee (for having contraband in her car), the jury was

authorized to reject this hypothesis as not reasonable in light of the totality of the evidence in the case.

The State presented direct evidence that Cooper arranged to use his fiancee's car and allowed Branche to drive it, as well as direct evidence that Cooper and Branche gave differing accounts of their travel that day. When police found cocaine in the trunk, Cooper was not surprised, but rather disappointed. All of this supports a finding that Cooper was aware of the cocaine, and he (not Branche or his fiancee) had arranged to make the trip with it. Based on this record, the jury was authorized to find that no other reasonable hypothesis of Cooper's innocence existed.[9] Accordingly, this enumeration presents no basis for reversal.

2. Cooper also contends that he received ineffective assistance of counsel because trial counsel failed to object to testimony by the deputies regarding the general behaviors of drug traffickers. Based on the record in this case, this enumeration presents no basis for reversal.

---

[9] See *Jones*, 369 Ga. App. at 342 (1); *Estrada-Nava v. State*, 332 Ga. App. 133, 137-138 (2) (771 SE2d 28) (2015), overruled on other grounds by *Martin v. McLaughlin*, 298 Ga. 44, n.3, 46 (779 SE2d 294) (2015); *Valdez v. State*, 310 Ga. App. 274, 277 (1) (712 SE2d 656) (2011).

To establish that his trial counsel was constitutionally ineffective, [Cooper] was required to prove both deficient performance by counsel and resulting prejudice. To prove deficient performance, [Cooper] had to demonstrate that counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. Because judicial scrutiny of counsel's performance must be highly deferential, the law recognizes a strong presumption that counsel performed reasonably, and the defendant bears the burden of overcoming this presumption. To carry this burden, [Cooper] must show that no reasonable lawyer would have done what his counsel did, or failed to do what his counsel did not do. In particular, *decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.*

Even if a defendant can prove that his counsel's performance was deficient, he must also prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability of a different result, which . . . is a probability sufficient to undermine confidence in the outcome. In all, the burden of proving a denial of effective assistance of counsel is a heavy one.[10]

---

[10] (Citations and punctuation omitted; emphasis supplied.) *Smith v. State*, 298 Ga. 406, 412 (3) (a) (782 SE2d 269) (2016), quoting *Harrington v. Richter*, 562 U. S.

9

Here, Cooper takes issue with his trial counsel's failure to object to testimony by the arresting deputy drawing on his experience involving hundreds of drug cases and thousands of traffic stops. Specifically, based on his experience, the deputy testified regarding strategies that drug traffickers use to distance themselves from culpability and whether Cooper's conduct was consistent with such patterns. For example, the deputy testified that smart and experienced drug traffickers will use a vehicle that does not belong to them, will engage a driver who has no criminal history, and will use shrink wrap to prevent a successful fingerprint analysis. Cooper now contends that this evidence was impermissible opinion testimony.[11]

Cooper's trial counsel, who had conducted more than 200 criminal trials, did not object to this testimony. Instead, Cooper's trial counsel explained at the motion

86, 104 (131 SCt 770, 178 LE2d 624) (2011), *Strickland v. Washington*, 466 U.S. 668, 689, 694 (III) (104 SCt 2052, 80 LE2d 674) (1984), and *Reed v. State*, 294 Ga. 877, 882 (757 SE2d 84) (2014).

[11] See generally *Bly v. State*, 283 Ga. 453, 458 (2) (660 SE2d 713) (2008) ("Opinion testimony is allowed where the nature of the question is such that the factors leading to a conclusion are not known to the common or average person, but are among those things shrouded in the mystery of professional skill or knowledge. However, where jurors can take the same elements and constituent factors which guide the expert to his conclusions and from them alone make an equally intelligent judgment of their own, independently of the opinion of others, then undoubtedly this should be done.") (citations and punctuation omitted).

for new trial hearing that he employed a strategy to show how the State failed to prove Cooper met its purported profile of a drug trafficker. Trial counsel pointed out that the State could not introduce Branche's criminal history to show that she was an innocent driver recruited by Cooper, nor could it introduce Cooper's. Further, counsel contested the deputy's characterizations of Cooper and Branche's demeanor as excessively nervous and shaking — pointing out that the video evidence appeared to show neither. And trial counsel cross-examined the deputy about the fact that there was no information taken from the cell phones found in the car that showed any communication or coordination regarding drug trafficking. In sum, trial counsel explained, "He had no wrappers, he had no drugs, he had no money. He had nothing on him. They will bring up . . . what the big drug dealers do, they do all the stuff. It didn't apply to [Cooper]. That's what I was trying to get [the jury] to understand."

Based on this record, assuming without deciding that the testimony at issue was objectionable, Cooper cannot demonstrate constitutionally deficient representation. Trial counsel's explanation of his strategy of not objecting was not so patently unreasonable that no attorney would pursue it — he even referenced a prior case in which a similar strategy had been successful. "In evaluating the reasonableness of trial

strategy, every effort should be made to eliminate the distorting effects of hindsight. Thus, deficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed."[12] Therefore, based on trial counsel's reasonable strategy for not objecting, this enumeration is without merit.

*Judgment affirmed. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*

---

[12] (Citation and punctuation omitted.) *Washington v. State*, 312 Ga. 495, 502-503 (3) (b) (863 SE2d 109) (2021).