NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0418
Albert Glover
v.
The State

On Appeal from the Superior Court of Baldwin County
No. 2020SUCR53656

Decided: June 2, 2026

BETHEL, Justice.

Albert Glover was convicted of the malice murder of Michael Dawson, his cellmate at Baldwin State Prison.[1] Glover appeals, arguing that the evidence was not sufficient to support his conviction, that the trial court committed two evidentiary errors, that the State violated its obligation to disclose a witness's pecuniary interest in testifying, and that trial counsel was ineffective. Glover also makes a cumulative error argument. For the reasons that follow, these claims fail, so we affirm.

---

[1] The crimes occurred on December 25, 2019. In November 2020, a Baldwin County grand jury indicted Glover for malice murder, felony murder predicated on aggravated assault, and aggravated assault. At a June 2022 trial, a jury found Glover guilty of all counts. The trial court sentenced Glover to serve life in prison without the possibility of parole for malice murder; the other counts merged or were vacated by operation of law. Glover filed a timely motion for new trial, which he subsequently amended through new counsel. Following an evidentiary hearing, the trial court entered an order denying Glover's motion for new trial, as amended, on September 9, 2025. Glover filed a timely notice of appeal, and his appeal was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

1. Glover first argues that the evidence at trial was not sufficient to support his conviction as a matter of constitutional due process because, he says, the State failed to disprove beyond a reasonable doubt his claim of self-defense. We disagree.

The evidence at trial showed the following. Shortly after breakfast on the morning of December 25, 2019, Glover alerted corrections officers that Dawson was "unresponsive" in the cell the two men shared.[2] Upon entering the cell, officers found the deceased Dawson face down in the bed with the bedsheets pulled up to his neck and a cap over his head. "[R]ed strangulation marks" were visible on Dawson's neck. Following an autopsy, the medical examiner concluded that Dawson was first manually strangled and then strangled with a ligature and opined that, due to the manner in which pressure was applied, Dawson was face down at the time of death, and "it took a while for [him] to die[.]" Dawson's body also showed signs that he struggled during the strangulation, including a laceration on his forehead and

---

[2] The record reflects that, at the time of the crimes, Glover was serving a 20-year sentence for a 2004 conviction for arson. Dawson was serving a sentence of life in prison for a 2007 conviction for the malice murder of another inmate while he was incarcerated at Coastal State Prison. The jury did not hear testimony about Glover's prior conviction, though, as discussed in Division 2 below, Glover was permitted to testify about his knowledge of Dawson's conviction for murder.

Glover and Dawson had both been diagnosed with schizophrenia. At the time of the crimes, the men were housed in a "lock-down" cell at their own request. A prison nurse explained that Dawson, who had been classified as a "mental health inmate," requested a transfer from the general population dorm to a lock-down cell because "he was paranoid" and "hearing voices." And Glover testified that he requested to be placed in a lock-down cell because he preferred to be alone. Despite Dawson's previous conviction for killing his cellmate and the self-reported basis for his request to be housed in relative isolation, prison staff determined it was unnecessary to place Dawson in a cell by himself because he did not report wanting to hurt himself or others.

abrasions on the backs of his hands, arms, and legs. Glover was subsequently detained and questioned. Glover also was photographed as part of the investigation, and investigators did not observe any scratches, abrasions, or other injuries to Glover's body.

At trial, Glover advanced a justification defense, asserting that he killed Dawson to prevent Dawson from sexually assaulting him, after Dawson made sexual advances toward him. Glover testified in his own defense. According to Glover's testimony, when he and Dawson were first placed in the cell together two days before the crimes, he asked Dawson what he was in prison for; Dawson responded that he was in prison for murder but refused to answer Glover's question about whom he had killed. Glover further testified that "just because he's a murderer, whoever he killed, … it doesn't fall back on me because I can take care of myself." Glover testified about discord between himself and Dawson in the days before the crimes, explaining his preference for a clean jail cell and noting Dawson's failure to clean up after himself and keep the cell in order. As to the events leading up to the murder, Glover testified that he was lying on the floor trying to sleep when he twice felt something graze his chest and, thinking it was an insect, tried to swat it away but instead made contact with Dawson's finger. Glover then looked at Dawson and saw Dawson looking back at him "with a smile on his face." Glover asked Dawson what he was doing, and Dawson responded by asking what Glover was "going to do about it." Glover admitted that he killed Dawson, and though he refused to divulge further details about the murder itself, he testified at some length about the personal offense he took to Dawson's perceived sexual advances. Glover emphasized in closing that sexual assault in prison is "a systemic problem," that Dawson was 15 years younger than Glover, that aging prisoners are subject to

more frequent "challenges" from younger inmates, and that Glover reasonably viewed Dawson's actions that night—"[a] killer touch[ing] him sexually and dar[ing] him to do something about it"—as a threat against which he had to defend himself.

On appeal, Glover argues that the trial evidence established that he acted in self-defense because Dawson's mental health, his admission that he had previously killed someone, and his touching Glover "all in the context of an understaffed, isolated prison environment combined to create a scenario" under which Glover reasonably believed deadly force was necessary to defend himself. And he asserts, in light of that evidence, that the State failed to disprove that he acted in self-defense. We disagree.

When this Court evaluates the sufficiency of the evidence as a matter of constitutional due process, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 US 307, 319 (1979) (emphasis omitted). "Our review leaves to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be made from the evidence." *Yarn v. State*, 305 Ga. 421, 423 (2019).

To justify the use of deadly force, a defendant must prove that he "reasonably believe[d] that such force [was] necessary to prevent death or great bodily injury to himself." OCGA § 16-3-21(a). "A homicide is not so justified if the force used by the defendant exceeds that which a reasonable person would believe was necessary to defend against the victim's unlawful act." *Frison v. State*, 323 Ga. 156, 160 (2025) (quotation marks omitted). "When a defendant raises a justification defense at trial, the State

4

has the burden of disproving that defense beyond a reasonable doubt." Id. But "[q]uestions about the existence of justification are for the jury to resolve, and the jury may reject any evidence in support of a justification defense and accept evidence that a [killing] was not done in self-defense." *Goodson v. State*, 305 Ga. 246, 248 (2019).

Viewed in the light most favorable to the jury's verdict, the evidence authorized the jury to find that Glover intended to kill Dawson and to reject Glover's claim of self-defense. Indeed, Glover's self-defense claim was less than compelling—the defense was advanced primarily through the argument of counsel with Glover detailing the events leading up to the murder and admitting to killing Dawson but refusing to provide any details about the killing. And the only evidence offered in support of that defense was Glover's own self-serving testimony, which the jury was authorized to reject. See *Gude v. State*, 313 Ga. 859, 863 (2022) ("[Appellant] claimed that the shooting was an act of self-defense based on [the victim's] allegedly aggressive and unwelcome sexual advances toward him, but the jury was entitled to reject [appellant's] self-serving version of the events."). Moreover, evidence that Dawson was strangled while lying face-down, that he struggled during the attack, and that "it took a while for [him] to die," all while Glover suffered no visible injuries, contradicts the self-defense claim. See *Willerson v. State*, 312 Ga. 369, 373 (2021) ("Given the brutality of the attack against the victim, the extent of the victim's injuries, and the fact that [appellant] suffered no injuries in the altercation, the evidence presented by the State was sufficient to contradict the self-defense claim."). In short, the evidence presented at trial was sufficient to authorize a rational jury to reject Glover's claim of self-defense and to find him guilty beyond a reasonable doubt of malice murder. See id. Accordingly, this claim fails.

2. Glover next contends that the trial court erred by excluding a certified copy of the transcript of the hearing at which Dawson pleaded guilty to murder, which Glover sought to admit in support of his self-defense claim.[3] In a pre-trial motion in limine, the State argued that the transcript was irrelevant to the issues in the case absent evidence that Glover acted in self-defense. In response, Glover asserted that the evidence should "be admitted as relevant evidence under [OCGA §] 24-4-402." Glover further argued that, when Dawson told Glover he had killed someone, he "used it as sort of an implied threat" and, as such, the prior conviction was relevant to show that Dawson was both "willing[ ] to use violence to the point of killing somebody" and "not afraid to take the law into his own hands." While Glover asserted that he knew that Dawson had previously killed someone, he conceded that he was unaware that the victim was another inmate. Finding no evidence to tie the circumstances of Dawson's conviction to the charged crimes, the trial court excluded the transcript, but indicated a willingness to reconsider the issue at trial.

At trial, following his testimony on direct, Glover again raised the issue of admitting the guilty plea transcript, arguing it was relevant to corroborate his testimony that Dawson admitted to killing someone. The trial court affirmed its ruling excluding the transcript. Now, on appeal, Glover asserts that the transcript was admissible under OCGA § 24-4-404(b) to corroborate his

---

[3] The transcript reflects that Dawson and his cellmate were jointly charged with killing a third inmate who had been convicted of child molestation and reckless conduct by an HIV-infected person. According to Dawson, the inmate had threatened to infect Dawson and Dawson's cellmate with HIV, so he and his cellmate discussed "what they needed to do to stop" the other inmate. Dawson and his cellmate ultimately lured the inmate into their cell under the pretext of sharing drugs with him and then strangled him.

6

testimony that he had knowledge of Dawson's prior murder conviction and to show that his fear of Dawson was reasonable, citing in support of this argument *United States v. James*, 169 F3d 1210, 1214–15 (9th Cir. 1999) (en banc) (concluding that extrinsic evidence of victim's past violent acts was admissible under Federal Rule of Evidence 404(b) to corroborate defendant's testimony that she had reason to fear the victim based on "stories … of … a remarkable character of atrocity" told to the defendant by the victim).

"A trial court's decision whether to admit or exclude evidence is reviewed on appeal for an abuse of discretion." *Tarver v. State*, 319 Ga. 165, 169 (2024) (quotation marks omitted). "But we will reverse a conviction based on a trial court's abuse of discretion in excluding evidence only if the exclusion was harmful." *Mbungu v. State*, 322 Ga. 564, 567 (2025). And to determine whether a nonconstitutional error was harmful, we ask "whether it is highly probable that the error did not contribute to the verdict." Id. (quotation marks omitted).

Assuming without deciding that the trial court abused its discretion by excluding this evidence at trial and that Glover preserved this error for ordinary appellate review,[4] we conclude

_____

[4] We question whether this claim is preserved for ordinary appellate review. Glover argued below and maintains on appeal that the evidence at issue was admissible to corroborate his testimony that he had knowledge of Dawson's prior conviction for murder. But from our review of the record, it does not appear that, in raising this issue in the trial court, Glover argued that this evidence should have been admitted under OCGA § 24-4-404(b) or cited the decisional law he points to on appeal. Instead, he asserted only that the evidence was admissible "as relevant evidence under [OCGA §] 24-4-402." See *Walton v. State*, 322 Ga. 401, 407–08 (2025) (argument that trial court should have excluded evidence under OCGA § 24-4-404(b) was not preserved for

7

that any such error was harmless. As noted above, Glover argued at trial that he killed Dawson in self-defense to prevent Dawson from sexually assaulting him, and he attempted to show that his fear of Dawson was reasonable in light of his knowledge that Dawson had previously killed someone. See *Willerson*, 312 Ga. at 373 ("[T]he critical factor in a justification defense is whether a defendant acted with the fear of a reasonable person under the circumstances." (quotation marks omitted)). To that end, Glover was permitted to testify on direct examination about his knowledge that Dawson was in prison for murder. As such, the excluded evidence was at least somewhat cumulative of Glover's own testimony. And contrary to Glover's argument, the transcript of the hearing at which Dawson pleaded guilty to murder does not actually corroborate his testimony that Dawson *told him* he had been convicted of murder. It would merely corroborate that Dawson in fact had been convicted of murder. But that was not a fact in dispute at trial. Although no evidence was presented of that conviction beyond Glover's testimony, the State did not dispute it. Nor did the State dispute whether Glover knew of that conviction at the time of the killing.

Moreover, Glover's self-defense claim was weak and was substantially undermined by Glover's own testimony. In effect, Glover testified that, while Dawson's murder conviction caused him to be wary of Dawson, Glover could take care of himself,

---

appellate review where appellant's motion in limine made no reference to that statute and instead asserted only that the evidence at issue was not relevant under OCGA § 24-4-402 and was more prejudicial than probative under OCGA § 24-4-403). See also *Clark v. State*, 321 Ga. 732, 736 n.3 (2025) ("[W]here a defendant advances on appeal a different theory of admissibility than he argued at trial, the claim is not preserved for ordinary appellate review."). But we need not resolve this issue because Glover's claim fails even under ordinary review.

8

casting doubt on the assertion that Glover killed Dawson out of fear of injury. Indeed, Glover, having chosen to take the witness stand, never testified that he killed Dawson on the belief that he was in imminent danger. Rather, Glover's testimony strongly supported the inference that he killed Dawson in retaliation for Dawson's perceived disrespect or as a result of earlier disagreements between the two men in the days before the killing. Specifically, Glover testified that he had "an issue" with Dawson, pointing to Dawson's disruptive and "erratic" behavior in the cell, Dawson's failure to employ the standards of cleanliness that Glover expected, and Dawson's refusal to follow Glover's directions about maintaining the cell. And as to his reaction to Dawson's perceived sexual advances, Glover testified that he viewed those advances not as a threat of bodily injury but as a personal offense: "I'm nobody's punk, you don't try me like that. Yeah, he touched a nerve, seriously. Mental health is my thing, playing against my masculinity … . I don't play that same sex. But if they do, that's on them. That's all about respect." Thus, it is highly probable that the exclusion of the transcript of the hearing at which Dawson pleaded guilty, even if it was the product of error, did not contribute to the verdict, and this claim fails. See *Mbungu*, 322 Ga. at 567–68 (exclusion of evidence of victim's threats against appellant was harmless where excluded evidence was similar to other evidence admitted at trial and appellant's self-defense claim was weak); *Tarver*, 319 Ga. at 169–73 (any error in exclusion of evidence about victim's prior acts to show appellant's state of mind was harmless because excluded evidence was largely cumulative of admitted evidence and appellant's self-defense claim was weak).

3. In his third claim of error, Glover argues that the State failed to comply with its obligations under *Brady v. Maryland*, 373 US 83 (1963), and OCGA § 17-16-4, the reciprocal discovery

statute, to disclose evidence of a witness's pecuniary interest in testifying, and that he should be granted a new trial as a result. Specifically, during trial, the prosecutor informed trial counsel and the trial court in an on-the-record discussion that the witness, a former cellmate of Glover's who had not yet taken the stand, had requested financial compensation in exchange for providing information about the case. Defense counsel's response to that revelation was, "He asked you for money." The prosecutor provided additional information about the request, after which the trial court asked Glover's counsel if there was "[a]nything else … [she] want[ed] to put on the record." Defense counsel did not argue that the State's disclosure amounted to a violation of either *Brady* or the reciprocal discovery statute and instead simply responded, "Not on this subject[.]" Thus, the record shows that Glover failed to raise the issue of a *Brady* violation or a violation of the reciprocal discovery statute at trial, though he had an opportunity to do so, and these claims are waived for purposes of appellate review. See *Walker v. State*, 288 Ga. 174, 179 (2010) (where appellant had opportunity at trial to raise *Brady* objection based on State's disclosure of ballistics report on morning of trial but failed to do so, issue was waived on appeal); *Danenberg v. State*, 291 Ga. 439, 442 (2012) (failure to object at trial to purported violation of reciprocal discovery statute waived appellate review of issue).

4. Glover asserts that the trial court erred by admitting the statement of his former cellmate because, he says, the State failed to lay a foundation to admit the statement as a prior inconsistent statement. Glover did not object to the admission of this statement at trial on the basis of a lack of foundation, so this claim is reviewed only for plain error. See OCGA § 24-1-103(d); *Johnson v. State*, 316 Ga. 672, 686 (2023). To show plain error, Glover must show: (1) there was a legal error that was not affirmatively

10

waived; (2) the error was clear or obvious; (3) the error affected his substantial rights, meaning it likely affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *Washington v. State*, 312 Ga. 495, 498 (2021). Glover cannot establish plain error because the record shows that the alleged error was affirmatively waived when trial counsel strategically decided to use portions of the statement to bolster Glover's self-defense claim.

Specifically, the record shows that, when the State moved to admit the cellmate's statement, Glover's trial counsel initially objected on the basis that the prosecutor intended to play a redacted recording of the statement and that certain redacted portions of the statement were relevant to the case. Counsel explained that the cellmate "hypothesizes there are reasons Mr. Glover didn't get along with [Dawson], and it's because [Dawson] was bisexual. And I think that goes directly to our claim of what happened here. My client is claiming that Mr. Dawson touched him." When the prosecutor indicated that she did not have an unredacted copy of the statement with her, Glover's counsel responded that it was "acceptable" for her simply to question the detective about that portion of the interview. When asked by the trial court, counsel confirmed that she was withdrawing her objection and would instead question the detective about the statement.

As we have recognized, "[i]n evaluating the first prong of the plain error test, a strategic decision to refrain from objecting may constitute the equivalent of an affirmative waiver." *Washington*, 312 Ga. at 499 (quotation marks omitted). See also *Griffin v. State*, 309 Ga. 860, 865 (2020) ("[T]he appellate court can conclude that the defendant intentionally relinquished or

abandoned a known right if the appellate court can discern a tactical reason on the part of the defense for failing to take appropriate action to preserve that right." (quotation marks omitted)); *Tyner v. State*, 305 Ga. 326, 331 n.4 (2019) ("[T]rial counsel's sound strategy does not become plain error at appellate counsel's urging." (quotation marks omitted)). And the record here clearly shows that Glover, by choosing to withdraw his objection and to incorporate portions of the statement into his theory of defense, intentionally relinquished any claim that the trial court erred by admitting the evidence. See *Washington*, 312 Ga. at 499; *Griffin*, 309 Ga. at 865–66. This claim thus fails at the first step of plain-error review.

5. Glover next argues that trial counsel rendered constitutionally ineffective assistance. To prevail on this claim, Glover bears the burden of showing both that his counsel's performance was professionally deficient and that he suffered prejudice as a result of that deficient performance. See *Strickland v. Washington*, 466 US 668, 687 (1984). To establish deficient performance, Glover must show that trial counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms, which is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably." *Lee v. State*, 318 Ga. 412, 420 (2024) (quotation marks omitted). And to establish prejudice, Glover must show "a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. (quotation marks omitted).

Glover argues that his trial counsel was ineffective by failing to object to the admission of his former cellmate's statement, discussed in Division 4 above, asserting that there was no foundation for the admission of the statement as a prior

12

inconsistent statement.[5] But Glover "does not argue, much less demonstrate, that the State could not have provided additional foundational support" for the admission of the cellmate's statement if his counsel had objected. *Vivian v. State*, 312 Ga. 268, 273–74 (2021). Glover's failure to make this showing dooms his ineffective assistance claim. See id. (rejecting ineffectiveness claim where appellant failed to demonstrate that the State could not have provided further foundation to support admission of challenged evidence had trial counsel objected); *Lee*, 318 Ga. at 428–29 (same).

In any event, as we discussed in Division 4 above, the record shows that trial counsel made the strategic decision not to object to the statement's admission and instead to use portions of that statement to support Glover's theory of defense. See *Blalock v. State*, 320 Ga. 694, 700 (2025) ("[T]he making of objections falls within the realm of trial tactics and strategy and thus usually provides no basis for reversal of a conviction." (quotation marks omitted)). It is well settled that forgoing an objection to allow the admission of evidence that supports the theory of defense is a reasonable trial strategy, and Glover makes no effort to demonstrate otherwise. See *Griffin*, 309 Ga. at 867 ("Given counsel's founded, reasonable belief that [appellant] was best served by using this evidence to his advantage instead of objecting to it, counsel's decision amounted to reasonable trial strategy that does not constitute deficient performance."). As such, Glover has

---

[5] At trial, defense counsel asserted that the State intended to introduce the cellmate's statement as a prior inconsistent statement, but counsel's basis for that assertion is unclear. The record reflects that the State filed a pretrial notice of its intent to introduce the cellmate's statement pursuant to OCGA § 24-4-404(b) for the purposes of showing Glover's intent, opportunity, and preparation, and at a subsequent hearing, the State advanced that same argument.

failed to show that trial counsel performed deficiently, and his ineffective assistance claim fails. See id. at 866 ("[I]f [an appellant] fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland* test.").

6. Finally, Glover contends that the cumulative effect of errors at his trial requires reversal of his conviction. To establish cumulative error, however, Glover must show that "at least two errors were committed in the course of the trial, and that, considered together along with the entire record, the errors so infected the jury's deliberation that they denied him a fundamentally fair trial." *Moss v. State*, 322 Ga. 757, 769 (2025) (cleaned up). Because we have assumed only one error by the trial court—excluding evidence of Dawson's prior conviction—and concluded that trial counsel did not perform deficiently, Glover cannot show that at least two errors occurred. As such, "there is no basis for evaluating the cumulative effect of errors," and this claim fails. Id. (quotation marks omitted).

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*